Our last case today is Aquatex v. Techniche Solutions You may proceed, Mr. Wheat. Thank you, Your Honor. May it please the Court. Quote, The subject matter surrendered by the narrowing amendment bears no relation to the composition of the fiberfill batting material. End quote. Thus, the trial court erred in holding that prosecution history estoppel barred Aquatex from asserting infringement under the doctrine of equivalence. Upon remand, the trial court must consider whether or not each limitation of the claims in dispute or its equivalent is present in the accused Techniche products. That is what this court said in the prior appeal. On remand, the trial court said, Because plaintiff made narrowing amendments to Claim 1 and 9 to obtain the 977 patent, a presumption of prosecution history estoppel by amendment arises which plaintiff has not overcome. Thus, plaintiff may not rely on the doctrine of equivalence to prove patent infringement. On remand, the trial court totally ignored the instructions this court provided as a result of the prior appeal and thus violated the law of the case. This court provided an extremely narrow instruction on remand. It didn't say, consider whether the doctrine of equivalence applies. This court said, The trial court erred in holding that prosecution estoppel barred Aquatex from asserting infringement under the doctrine of equivalence. Upon remand, the trial court must consider whether or not each limitation of the claims in dispute or its equivalent is present in the accused Techniche products. This court instructed the trial court to look at the claims and see if what is in the accused product is equivalent to what was provided in the claims. The only limitation in issue was the fiber fill batting layer of these multi-limitation claims. The patent itself, we can focus on claim nine, refers to that layer as a multi-layered liquid retaining composite material comprising a filler layer comprising a fiber fill batting material and hydrophilic polymeric particles. So the claim refers to that layer as liquid retaining and notes that that layer is comprised of the fiber fill and the hydrophilic particles. Somehow the trial court came up with the notion that the fiber fill has to be hydrophobic. Well, but let's assume for the moment that the district court's reasoning had some problems with it, which I think the appellee at least in part agrees with. There was a motion for summary judgment which covered the doctrine of equivalence, right? Yes, Your Honor. Under our decision in Cyprus, in order to prevail on the doctrine of equivalence claim, you have to have testimony in linking argument. In response to the motion for summary judgment on doctrine of equivalence, non-infringement on the doctrine of equivalence, did you present testimony about infringement by the doctrine of equivalence? Yes, we did, Your Honor. And actually, there were cross motions for summary judgment on this issue. Well, where's the testimony in the record? I didn't see any reference to that. Well, here's the link, Your Honor. The patent itself describes the function of the fiber fill. But I'm asking a specific question. I'm asking you, was there testimony that this infringed under the doctrine of equivalence that you supplied in response to the motion for summary judgment? The testimony was the testimony of Teknish's president, who testified about the function, how their filler lawyer worked. OK, did he address the doctrine of equivalence in a testimony? Well, he wasn't a lawyer, so no, Your Honor. All right, so there was nobody who testified that this infringed under the doctrine of equivalence. There was no such affidavit or declaration. There were not expert opinions. There were not lawyers using the terminology doctrine of equivalence, as we should do with factual issues. We focused on the facts, and the facts were the patent says the purpose of the fiber fill is to retain and distribute the superabsorbent polymer particles. But as I understand Cyprus, you've got to address the doctrine of equivalence specifically. You've got to say this infringes under the doctrine of equivalence, and here's why. And we did, Your Honor. You did have such testimony? Not for testimony, but the evidence made the link. The patent described the function of the fiber fill. But the court finds that you've not carried your burden to prove that the filler layer performs substantially the same function in a substantially same way. But the error of law the trial court made there was the construction it made of the claim, which is a question of law. And the trial court imported the limitation requiring that the fiber fill be hydrophobic, that the fiber fill provide air pockets around the absorbent polymer crystals. That was an error of law. That wasn't a factual error or a factual finding. The court came up with a brand new construction of the claim. How does fiber fill batting evaporatively cool? The function of the fiber fill, according to the patent, is to distribute and retain the superabsorbent polymers. And then it's just the reaction of air to the water evaporating the water that's absorbed in the filler layer and cooling the air between the body of the person wearing it. I'm not so interested in the function. I'm interested in the way. How does it do it? That's what the district court is finding. The way is different. The trial court construed the claim to require the fiber fill to create air pockets throughout the filler layer around the absorbent polymers. The patent didn't mention that. The way this works, according to the patent, is you have the filler layer consisting of the fiber fill and the superabsorbent polymers that retain water. The water evaporates over time, and the air space between the garment and the person wearing the garment is cooled by the water evaporating. That is the way in which this product works. There is no need to go outside of the patent to look at advertising rhetoric to figure out how this product works. The patent itself describes how it works. The patent describes the function of the fiber fill to distribute the polymers and to retain the polymers. Actually, the prior art kind of explains that. Some of the prior art was quilted garments. Like a vest with quilted pockets. These polymers would be placed in the pockets, but without the fiber fill to distribute them. The gravity result would be that they would bunch up in the bottom of each of the quilted pockets in the vest. By impregnating the fiber with these polymers, it retains them distributed throughout the garment. Then you soak that layer, and as it evaporates, that is the way in which it cools the person wearing the garment. How do you distinguish the way and the result and the function? How do you distinguish those in this case? What's the function, what's the way, and what's the result? The limitation and issue is the fiber fill batting layer. The function of the fiber fill is to distribute and retain the super absorbent polymers. The way it works is you soak it, as the patent teaches. You wear it, and as the water evaporates within the filler layer, it cools the person wearing the garment. The result is the cooling, which is a result of the evaporation, which is the way it works. The function of the way you get there is the filler layer that is soaked with liquid, and then as the liquid evaporates over time, it cools the wearer of the garment. It's your view, as I understand it, that you can take the limitations of the patent and the function or what the accused device is, and without any expert testimony, reach a conclusion that the accused device does it in the same, has the same function, does it in the same way, and has the same result. Yes, Your Honor. The patent itself describes the, reading the claim in reference to the specifications, clearly describes the function of the limitation and issue. The testimony of the defendant is that that's what theirs does also. Why isn't Vysorb more in line with the prior art, Zephyroglue, than the claimed invention? Your Honor, this court addressed that very point in the prior appeal. The footnote saying that's not the point. Vysorb is not the accused product. Vysorb is what they use to satisfy one limitation of a multi-limitation claim. But Vysorb itself is not infringing. But just as this court held in the prior case, the prior art and what's claimed in this patent are two totally different processes. But we're looking now limitation by limitation. Yes, Your Honor. The limitation we're looking at is fiberfill batting. The fiberfill batting you use is Vysorb. Why isn't Vysorb closer to Zephyroglue than the prior art than the claimed invention? An item specified in a single limitation of a multi-limitation claim can obviously be something that's been in the prior art for thousands of years. The patent covers the multiple limitations. And this fiberfill batting, they were just practicing the prior art. That one component of a multi-component product, yes, Your Honor. So the district judge is correct to say that you did not prove that there was infringement of that particular component by the doctrine of equivalence, that particular element of the claim. There was no need for us to go there, Your Honor. The focus of this is the claim as a whole, not the specific limitation. Yes, we do need to look at it on a limitation by limitation basis, of course. Doctrine of equivalence, you've got to have an equivalent for every limitation. That's right. And as this Court is well aware, often in a multi-limitation claim, each of the individual elements... So you don't have an equivalent for this particular limitation, right? You're saying infringement by the doctrine of equivalence occurs on the claim as a whole, but you don't have an equivalent for this particular limitation because in this instance, it's closer to the prior art than the claimed invention. No, Your Honor, that's not what we're saying at all. Okay, help me out. It makes no difference whether BISORB is in the prior art. We're not claiming that BISORB is infringing. We're claiming that the product and process as a whole is infringing. Using BISORB as one component in this multiple limitation claim, that is... What is the equivalent for in the accused device for the fiberfill batting? It is the... Limitation. It is the fibers in the BISORB. BISORB is fibers plus the... Okay, that gets us right to the point. Is there then any evidence that that element is infringed by the doctrine of equivalence? Kind of back to where we started. Is there any evidence that that infringes under the doctrine of equivalence? Yes, Your Honor. The defendant's president testified about how that layer, as used in the defendant's product, satisfies the identical function and the identical way to obtain the identical result as what is described in this patent. No, he didn't use the legal terminology doctrine of equivalence. He didn't refer to the function, way, or result test. He didn't refer to the all elements rule. He wasn't a lawyer, but his testimony... And he didn't show that that particular element was actually in the prior art. Not in the prior art. Your Honor, it doesn't matter whether a specific limitation is... I understand. I understand. In the footnote where this court addressed that directly in the prior appeal of this case, which was on page 1379, the footnotes weren't numbered, but it was the one with the two asterisks where the court said that the fact that BISORB is a state of commerce isn't the question. The fact that BISORB's prior art doesn't matter. The focus, of course, in an infringement case is whether the entire device as a whole is covered by each of the elements of the multi-limitation claim. Okay. Where in the record, in the appendix, is the testimony you're talking about by the defendant's president? Yes, Your Honor. In the appendix at pages A53 through 59. 53 to 59? Yes, Your Honor. Let's see. My time is exhausted. Thank you, Mr. Waite. Mr. Ramage? It's actually Ramage, Your Honor. Ramage, excuse me. Half my family says it one way, half says it the other way. Okay. We'll say it your way. The district court did conduct an element-by-element examination of claims one and none. It did conduct a proper analysis under the doctrine of equivalence on page 10 of the opinion, which is in the appendix at page 11. It says the court now turns to an element-by-element examination of claims one and nine of the 977 package. And then for approximately the next 10 pages, it goes through each of the elements of the method claims one and nine from the very beginning to the very end. It's not limited to the fiberfill battery material, and the court did what this court instructed it to on the prior appeal. The court on the prior appeal, of course, held that there was no literal infringement and turned down the term fiberfill on that appeal. It remained for a full consideration of the doctrine of equivalence, in effect giving the plaintiff a second opportunity. Plaintiff has the burden of proven infringement by the preponderance of the evidence. As this court has recognized already by its questioning, there's no testimony, there's no evidence. They've not met their burden of proof. They've once again failed to establish infringement. There are a number of limitations that have been raised in the briefs. There are four in particular that I wanted to address on appeal during our argument. The first is the Wilson-Sporting Goods case, which talks about the scope of the claim under the doctrine of equivalence, whether it would encompass the prior argument. The opening brief failed to address this point, which was raised by the defendant below, and thus has conceded as a matter of procedure on appeal, since its well-established arguments not raised in the opening brief are waived. It was addressed for the first time in the reply brief, but that's not sufficient to preserve that issue in the opening brief. In fact, plaintiff doesn't point to where the issue is addressed in its opening brief. Of course, it can be. Are we talking about direct testimony saying that they are equivalent, or is there testimony talking about the fibers in visor and then we can compare them to separately? Is there testimony that they're the same, that there isn't any difference from the point of view of this patent between the accused product's combination of natural and synthetic fibers and the patented device, which has entirely synthetic fibers? That's the basis for our earlier decision. No, Your Honor, there is no—and this is the same question I understand you were asking. Is there any direct testimony that talks about the doctrine of equivalence in that analysis? No, Your Honor, there isn't. The burden of— No, but I'm asking—I understand that there's no testimony directed to the doctrine of equivalence specifically, but is there testimony comparing the function of the synthetic natural fiber mix in the accused product to the patented fibers— to the synthetic fibers in the patented device?  I mean, that's the burden of proof that the plaintiff needed to establish by expert testimony or by other means, and it simply isn't there. Specifically argued in Wilson's Sporting Goods, Wilson's Sporting Goods says, the burden is on the plaintiff to prove that the range of equivalence it seeks does not ensnare the prior art. And they simply haven't met their burden of proof in this case, Your Honor, to establish that there is doctrine of equivalence or that their interpretation, their current interpretation of the doctrine of equivalence would not ensnare the prior art. The basis, the factual basis for concluding that the asserted scope of equivalence would reach the prior art, and specifically sephiraglue, is found in the prosecution history of the patent issue, the prior art sephiraglue patent, and the information in the record about visor. The prosecution history, of course, makes clear, as you saw in the prior appeal, the examiner initially rejected the claims in issue, in this case claims one and nine, as being anticipated by sephiraglue, and it found that sephiraglue disclosed the method of cooling the person comprising all the elements of the original claims. The plaintiff responded by pointing out the differences, and specifically two differences. It failed to disclose the evaporative cooling method, and it failed to disclose the material of the current product, the invention. In addition, sephiraglue does talk about evaporation. There is slow evaporation from sephiraglue. Sephiraglue, in its specification, and this is in the appendix at page 552, the hydrogel formed when water enters the article of manufacture of the invention is substantially contained within the device and does not leak out easily. Some water can evaporate slowly from the article during use. However, the article may then be rewritten to assure that the full capacity of the filling to absorb water is employed. And that's exactly the concern, Your Honor. But the whole purpose of the prior art was to cool by some sort of compression, wasn't it, and to avoid evaporation, whereas the patent concerned cooling by evaporation, and your product was advertised as cooling by evaporation, wasn't it? Exactly, Your Honor, and that gets to the function of the result. The question is if the goal, in fact, the specification of the patent in this case states that one of the primary goals or one of the primary benefits of the blend, the fiberfill and polymer blend in this filler layer, is to promote evaporative qualities. That's the function of that particular element, is to promote evaporative qualities. There's nothing in the patent specification that talks about how it actually accomplishes that. And that's why we've had the evidence with regard to the plaintiff's own website that talks about how its patented invention works. That's the way. You're not supposed to do that, am I? Well, actually, Your Honor, under Grabber Tank, that is something that could potentially be used. Now, the fact is there is no other evidence in this record as to the way that this evaporative cooling method is supposed to work or how this fiberfill layer is supposed to work with regard to that. Because, as a matter of fact, the prior art talks about evaporation. The prior art in Spiracle talks about there being slow evaporation. The undisputed evidence in the record, although there's no direct testimony comparing the two, demonstrates that technetious product, which includes Lysol as that filler layer, is similar in composition to Spiracle and operates in a similar fashion. Technetious product, according to the record, is a unique polymer-embedded fabric. It's an air-laid, nonwoven fabric manufactured from wood cellulose. In fact, this is found in the court's prior opinion in this case, where it describes the composition of Lysol. This use of natural fibers in combination with an artificial polymer is the same as Spiracle. So the composition is the same. Vysorb absorbs and holds liquids that are used for baby diapers, feminine hygiene products, and adult incontinence products. Obviously, you don't want liquids like that leaking out, and Vysorb is described as an absorbent. These physical characteristics were also noted by this court in its prior opinion. There may be slow evaporation. Obviously, there's going to be evaporation any time unless you have a complete absolute seal around something containing water. But Spiracle itself states that the article has slow evaporation itself. So with regard to the Wilson sporting goods limitation, if the scope of the plaintiff's patent is expanded by means of the Doctrine of Equivalence to reach the natural wood cellulose-containing, slow-evaporating cooling product of Technet, then it also would have to reach the natural wood- Except that for Wilson sporting goods, you have the expansion under the Doctrine of Equivalence encompassing the entire accused, the entire prior art. Each and every limitation of it was encompassed thereby. In this instance, there's just one limitation that there might have been a little prior art on, not the entire limitation of all the limitations of the patent. With regard to Claims 1 and 9, Your Honor, the examiner had already found that all the limitations did exist in the prior art for Claims 1 and 9. In a single prior art? In a single prior art. It was an anticipation rejection. This is not- But is that- This is a- Is anticipation before us here? No. Have you raised anticipation? But when you're talking about whether all the limitations in which you're looking at now are in fact found in the prior art, the examiner already found that all the limitations were, and there were only two differences that would enable Claims 1 and 9 to be patentable. And one was the fact on the issue of fiberfill, being natural, not containing a natural fiber. And the other one was they're talking about their evaporative cooling method, because Zephyric Glue, as it states itself, was slowly evaporating. So Visor, when it's used in the current product- Zephyric Glue was designed for compression cooling, not evaporative cooling. I'm not sure how Zephyric Glue satisfies your argument there. I'm not sure exactly what you're referring to. This claims evaporative cooling. Yes. Zephyric Glue was doing something entirely different. Yes, but it also did have evaporation. And, in fact, Visor, when you're looking at the way that it functions, and what its function is, it does not promote evaporation, which is the function of the filler layer. It does not act in the same way that the patented invention works. Well, how do I know that? Well, unless you are willing to consider what the plaintiffs are saying about how their invention works. No, but, I mean, you're saying and making a statement, where's the record support for that? I mean, that's the problem. It may be that they lose because they have the burden, on summary judgment, of showing that they have a case, but you're making statements which I don't see are supported by declarations or anything like that. I mean, it may be what you think, but that doesn't help us very much. How does the fiber fill work in this patent? You haven't really shown us a way that the patent's fiber fill works, so how can there be a comparison of that way, which we do not have explained to us, and the Visor to reach a finding of doctrine of equivalence or not? Well, that gets back to the issue of the burden of proof with regard to the plaintiffs. But once we get past that point, the only evidence that we have as to how the fiber fill works is in the plaintiff's own website. We can tie that in because we are looking at the… That's about the product. Well, it's not specifically about the product. It's talking specifically, it's talking about its patented three-layer design and how it works. It's not talking about a specific product. And in Grabber Tank, what this Supreme Court said, if you can look at a wide variety… But we know that Mr. Weed's going to arise in a minute and say that that advertisement was not dealing with the patent. That was dealing with something different from the claimed patent. It talks about the patented three-layer design itself, and if you look at the other website… How can that tell us what the claim limitations are in the patent? How can a description of the commercial product tell you what the claim limitations are? I'm having trouble with that. Well, to get to that point, Your Honor, you'd have to have expert testimony. And you didn't. To tie it together. You did. And the plaintiffs didn't either. And it's the plaintiff's burden of proof. What about the testimony of their president or whoever it was? They were talking about our president, and he doesn't make that… He makes no statement with regard to the optimal equivalents or how they function or how they… the way in which they work. There's absolutely no testimony on that, and he definitely is not an expert. A stopple has been raised. A stopple by amendment versus a stopple by argument. You think that's pretty well precluded by the law of the case? Well, it depends on what you're asking by what's precluded or what's not. First of all, the district court didn't ignore this court's prior ruling when it found a stopple by amendment. It found a stopple by amendment with regard to the evaporative cooling element which was added to the claim. It didn't apply a stopple by amendment to the entire… all the elements of the claims. This court in the prior appeal expressly stated that the ruling on the issue of a stopple by argument with respect to the meaning of fiber fill. The district court adhered to that ruling. What the district court did find was a stopple by amendment applied to the narrowing amendments plaintiff made to Claims 1 and 9 by the evaporation or evaporative cooling language. In fact, this court's prior ruling talks about those amendments and notes, says as much, when it says that at least one claim limitation was added here to overcome anticipation rejection. In fact, it would be in error for the district court to not find a stopple by amendment with regard to that particular claim limitation. In conclusion, Your Honor, the plaintiff has failed to meet its burden of proof. There are several grounds for rejecting the application of the Doctrine of Equivalence in this case, appropriate for summary judgment. This court should affirm the holding of the court below that technique does not infringe the Doctrine of Equivalence. Thank you. Mr. Romage. Mr. Wheat. The court will restore to you two minutes of rebuttal time. Thank you, Your Honor. So where does the testimony of the defendant's president address the equivalence of the synthetic fiber of the patented device with the mixture of natural and synthetic fibers in the accused device? Yes, Your Honor. In the deposition excerpt, sir. Now where, point me. You gave me a page range. I can't read all those pages sitting up here on the bench. Where exactly does he make that comparison? At page 83 of his deposition, line 15 through page 85, line 12. Give me the appendix page. Which would be in the appendix. Yeah. Okay. The appendix page A54 is one of the excerpts. Okay. Where is he? At page 85 of the transcript, let's begin at line 2 where we're inquiring about the fibers. The question is, the fibers that hold the superabsorbent particles in place. He answered fluff pulp. What type of fiber is that? The answer is cellulose, I believe. The question is, is that a wood fiber? Yes. So there's wood fiber in there that holds the particles in place. Answer, yes. That's it? That's the best you got, huh? Of the function of the fibers to hold the superabsorbent polymers in place, the identical function that's specified in the patent for the fibers to hold the particles in place. Mr. Ramaj says there's no evidence about how the defendant's product works. Well, there was evidence in the appendix at page A477 is some of the defendant's advertising material that describes how they work. Our garments are made with unique polymer embedded fabric when dipped in water for one to three minutes. The PBF, which is the acronym for polymer embedded fabric, absorbs water and stores it inside powerful polymer crystals. The encapsulated water then evaporates slowly over 8 to 12 hours, creating an extended cooling effect. The evidence is in the record of how the defendant's product works, and that's the same way the patent describes the manner in which this product works. The link was made in the record. No, it wasn't made as expert testimony. No, the lay witnesses didn't use the words doctrinal equivalent or function way result test or all elements rule or any of that legal terminology. But the record is clear that these products work the same way, same function, same result, same way. Thank you, Mr. Lee.